IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HEATHER C.,[1]                                                   Case No. 3:23-cv-00910-JR

                    Plaintiff,                                   OPINION AND ORDER

          v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

                    Defendant.

RUSSO, Magistrate Judge:

          Plaintiff Heather C. brings this action for judicial review of the final decision of the

Commissioner of Social Security ("Commissioner") denying her application for Title XVI Social

Security Income under the Social Security Act. All parties have consented to allow a Magistrate

Judge enter final orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28

U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed, and this

case is remanded for additional proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the
non-governmental party or parties in this case. Where applicable, this opinion uses the same
designation for a non-governmental party's immediate family member.

## PROCEDURAL HISTORY

Born in 1994, plaintiff alleges disability beginning April 27, 2020, due to post-traumatic stress disorder ("PTSD"), attention deficit hyperactivity disorder ("ADHD"), depression, anxiety, and back pain. Tr. 247, 265. Her application was denied initially and upon reconsideration. Tr. 66-82, 84-91. On May 17, 2022, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 32-57. On June 21, 2022, the ALJ issued a decision finding plaintiff not disabled. Tr. 14-25. After the Appeals Council denied a request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found that plaintiff had not engaged in substantial gainful activity since the application date. Tr. 17. At step two, the ALJ determined the following impairments were medically determinable and severe: "neurodevelopmental disorders, trauma disorder, depression, anxiety, attention deficit hyperactivity disorder, chronic low back pain, polycystic ovary syndrome, and obesity." Tr. 17. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 17.

Because plaintiff failed to establish a presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b) except:

> "[She] can occasionally climb ramps and stairs; can never climb
> ladders, ropes or scaffolds; can occasionally balance, stoop, kneel,
> crouch and crawl; should not have concentrated exposure to
> vibration or hazards; can do simple and detailed work that can be
> learned in 30 days or less; can deal with occasional changes in a

routine work setting; and can have occasionally superficial contact
with coworkers and the public."

Tr. 18-19.

At step four, the ALJ determined plaintiff has no past relevant work. Tr. 22. At step five,

the ALJ concluded, based on the VE's testimony, there existed a significant number of jobs in

the national economy plaintiff could perform despite her impairments, such as small products

assembler II, inspector and hand packager, and garment folder. Tr. 23.

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) discrediting her subjective symptom testimony; (2)

rejecting the medical opinions of Joseph Resendiz, DO, Lai Chim Chan, ND, and Kathryn Smith,

PMHNP; and (3) rejecting lay witness testimony. Pl.'s Opening Br. 5, ECF 14. The Court finds

the second issue raised by plaintiff dispositive.

## I.    Plaintiff's Testimony

Plaintiff contends the ALJ erred by discrediting her testimony concerning the extent of her

impairments. When a claimant has medically documented impairments that could reasonably be

expected to produce some degree of the symptoms complained of, and the record contains no

affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the

severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so."

*Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general

assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is

not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12

F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the

reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony."

*Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2016 WL 1119029. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

At the hearing, plaintiff testified she was unable to work due to back pain localized around her tailbone that necessitates a lying down throughout the day, an inability to focus for long periods, insomnia that causes fatigue throughout the day, requiring constant reminders to eat, drink, and maintain personal hygiene, and forgetfulness. Tr. 39, 41-42, 46-48. Plaintiff's function report included further limitations, such as a limited ability to lift, squat, bend, stand, reach, walk, sit, kneel, and climb stairs. Tr. 277. Plaintiff also stated she could walk for only 10 minutes before needing at least 30 minutes of rest before continuing, that she cannot handle stress or any form of criticism, and that she cannot pay attention for more than one second at a time. *Id.*

In terms of daily activities, plaintiff seemingly had no set schedule, as she would only wake up to eat, take her medication, use her computer, then return to bed, and sometimes she would not leave her bed. Tr. 273. When it comes to household chores, she takes out the recycling, cleans the cat's litterbox and feeds it, and sweeps and mops. Tr. 275. These chores can take anywhere from 15 minutes to an hour, and she needs to be reminded to do her chores, as well as take her medications. Tr. 274-75. Plaintiff also endorsed forgetting to get dressed, forgetting to eat and drink regularly, only shaving when she must go out or remembers, and that she has a hard time showering on her own. Tr. 274.

After summarizing her hearing testimony, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but her "statements about the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 19. Regarding plaintiff's physical impairments, the ALJ cited to inconsistencies in plaintiff's medical records, activities of daily living, and minimal and sporadic treatment as reasons for discounting plaintiff's subjective symptom testimony. Tr. 20-21.

Regarding plaintiff's mental health, the ALJ discussed inconsistencies in the plaintiff's medical records. Tr. 19-20. For example, while plaintiff complained of a severe inability to focus or concentrate, and that she had memory issues, records indicate that her attention was good even though she needed redirection, and her memory was intact. Tr. 20 (citing Tr. 444). The ALJ also included a report from June 2020 where she reported improved sleep, positive social interaction, normal memory, affect, and mood; a report from January 2021 where she reported doing reasonably well in school even though she was behind one project assignment; and several treatment records noting that while she demonstrated distractibility, her results were otherwise normal on mental status exams. Tr. 20 (citing Tr. 574, 736, 938, 1005, 1008-09, 1014, 1016, 1019, 1021, 1029-30, 1033, 1036).

Plaintiff argues the ALJ cherry picked records reflecting normal findings, and that plaintiff's records show she suffers from waxing and waning symptoms. Pl.'s Opening Br. 14, ECF 14. Plaintiff cites records showing she presented with slowed, monotone speech, depressed mood, flat affect, and ending sessions early due to fatigue. Pl.'s Opening Br. 14-15, ECF 14 (citing Tr. 733, 775-76, 882, 1005, 1013-14, 1016-17). Plaintiff's argument, however, is unavailing.

In the records cited by plaintiff, plaintiff's depressed mood and flat affect were due to the recent loss of her father and not taking her medication regularly. Tr. 733, 775-76. Records further indicate that she reported "doing pretty good" even though she was "juggling a lot right now." Tr. 882. Other records indicate that while she may have presented with abnormal findings, she was able to prioritize low vs. high priority tasks and adjust to-do lists accordingly, that she was "juggling things," but doing "okay," and that she was disinterested in therapeutic intervention. Tr. 1005, 1013-14, 1016-17.

Based on the inconsistencies between plaintiff's complaints and her results upon examination, the ALJ properly discounted plaintiff's subjective symptom testimony based on substantial evidence in the record. As such, while plaintiff argues for a different reading of the evidence, where the ALJ's finding is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). However, lack of corroborating medical evidence cannot serve as the sole basis for discounting a claimant's testimony. *See Brown v. Colvin*, 2014 WL 6388540, *5-6 (D. Or. Nov. 13, 2014) (reversing the ALJ's credibility finding where the only rationale supported by substantial evidence was inconsistency with the medical record).

In sum, regarding plaintiff's mental health, the ALJ erred in discounting plaintiff's mental health symptoms based solely on inconsistencies in the record.

As for plaintiff's physical health, the ALJ cited to minimal and sporadic treatment, activities of daily living, and inconsistencies in plaintiff's medical records as reasons for discounting plaintiff's subjective symptom testimony. Tr. 20-21.

The ALJ concluded plaintiff's treatment was "minimal and sporadic" but fails to provide specific reasoning to support this conclusion. As such, the ALJ has failed to provide the

reasoning necessary for this court to meaningfully review. Therefore, it was error to discount plaintiff's subjective symptom testimony based on this reason. *See Brown-Hunter v. Colvin,* 806 F.3d 487, 492 (9th Cir. 2015).

The ALJ's second rationale for discounting plaintiff's physical symptom testimony was predicated upon her activities of daily living. Plaintiff stated she experiences back pain localized around her tailbone, she must lay down at least three hours every day in order to relieve the pain, that sitting for even short periods causes her pain, she cannot stand or walk for more than five minutes, and that while she can work for up to three hours, she needs frequent breaks to change positions. Tr. 39-41. Plaintiff explained she has difficulty showering on her own, it takes her 15 minutes to an hour to do household chores such as cleaning the litterbox, feeding the cat, and sweeping and mopping. Tr. 275. She also noted she uses a chair when sweeping and mopping. *Id*. She does not go outside often, and her activities include writing, drawing, playing video games, and socializing online. Tr. 275-76. The ALJ discounted plaintiff's testimony because she traveled to Florida, completed her bachelor's degree after eight years, writes, plays games, and talks to friends. Tr. 20 (citing Tr. 859, 1064). The ALJ's reasoning, however, is unsupported.

Plaintiff traveled to Florida in order to provide her brother relief from his own mental health symptoms and spent most of her time lying down, and within the home. Tr. 7. Notably, a plaintiff need not be utterly incapacitated or "vegetate in a dark room in order to be eligible for benefits." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012). Neither plaintiff's single instance of travel, nor her ability to play games, write, or socialize with her friends online, provides evidence that these activities are transferrable to a work environment or that plaintiff spends a substantial portion of her day engaged in household chores. *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). Because the ALJ failed to explain how plaintiff's daily activities

undermined her testimony, this reason fails to provide a specific, clear, and convincing reason to discount her subjective symptom testimony.

Lastly, the ALJ cites inconsistencies with the medical record as a reason to discount plaintiff's testimony, and addresses plaintiff's records at length. Tr. 20-21. In August 2020, plaintiff reported persistent pain, and her body mass index was 46.29. Tr. 20 (citing Tr. 709). In November 2020, x-rays showed mild spondylolisthesis at L5-S1 related to pars interarticularis defects posteriorly. Tr. 20 (citing Tr. 716). The ALJ also included a January 2021 consultative exam where testing showed plaintiff's gait was normal, she was able to perform a full squat without assistance, she was able to sit comfortably and walk without assistance or difficulty. Tr. 721-22. She also had minimal tenderness over the lumbosacral area, a normal straight leg raise test, and it was noted that she would benefit from physical therapy. Tr. 724. The consultative examiner noted that plaintiff could stand and walk up to four hours and could sit for less than two hours. *Id*. In April 2022, plaintiff complained of worsening back pain after an incident in 2020 where she fell down the stairs and re-aggravated already existing back pain. Tr. 1093. On examination, she was tender at S1-S5 and had positive straight leg testing. Tr. 1094. Based on her results, acupuncture and Gabapentin were prescribed, as well as possible imaging depending on plaintiff's response to treatment. Tr. 1095.

Based on the inconsistencies between plaintiff's complaints of not being able to stand or walk for more than 10 minutes, or sit for any substantial length of time, the ALJ properly discounted plaintiff's subjective symptom testimony based on substantial evidence in the record. As such, while plaintiff argues for a different reading of the evidence, where the ALJ's finding is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). However, as discussed above,

inconsistencies with the medical record cannot serve as the sole reason for discounting symptom testimony. *See Brown-Hunter*, 806 F.3d at 492. As such, the ALJ has erred.

In summary, the ALJ's discounting of plaintiff's testimony based on minimal and sporadic treatment and her daily activities do not serve as specific, clear, and convincing reasons. The ALJ properly discounted plaintiff's testimony based on inconsistencies with the record, but because inconsistencies with the record cannot serve as the sole basis for discounting plaintiff's testimony, this reasoning constitutes error.

## II.    Medical Opinion Evidence

Plaintiff asserts the ALJ improperly discredited the opinions of Joseph Resendiz, DO, Lai Chim Chan, ND, and Kathryn Smith, PMHNP.

Where, as here, the plaintiff's application is filed on or after March 27, 2017, the ALJ is no longer tasked with "weighing" medical opinions, but rather must determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). "To that end, there is no longer any inherent extra weight given to the opinions of treating physicians . . . the ALJ considers the 'supportability' and 'consistency' of the opinions, followed by additional sub-factors, in determining how persuasive the opinions are."[2] *Kevin R. H. v. Saul*, 2021 WL 4330860, *4 (D. Or. Sept. 23, 2021). The ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* At a

---

[2] As the Ninth Circuit recently explained, "[u]nder the revised regulations . . . a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). The new regulations nonetheless "displace our longstanding case law requiring an ALJ to provide" different levels of reasoning (i.e., "clear and convincing" or "specific and legitimate") based on a hierarchy of medical sources. *Id.* at 787.

minimum, "this appears to necessitate that an ALJ specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion." *Id.*

When determining how persuasive a medical opinion is, supportability and consistency are the most important factors to consider. 20 C.F.R. § 416.920c(b)(2). These two factors each have a different focus. For consistency, the ALJ considers how consistent a medical opinion is with the other evidence in the record *Id.* § 416.920c(c)(2). For supportability, the ALJ considers the relevancy of the objective medical evidence and supporting explanations presented by the medical source to justify their own opinion. *Id.* § 416.920c(c)(1).

Dr. Joseph Resendiz, DO, conducted a consultative exam on January 25, 2021. He noted that plaintiff had a normal gait, was able to walk in tandem, could tiptoe and heel walk, and perform a full squat without assistance. Tr. 722. He also noted that plaintiff had normal straight leg raise tests, full strength in her upper and lower extremities, normal muscle bulk and tone, and minimal tenderness over the lumbosacral area. Tr. 723-24. As a result of testing, Dr. Resendiz assessed that plaintiff could stand and walk up to four hours, sit for less than two hours, could lift/carry and push/pull 20 pounds occasionally and 10 pounds frequently, no limitations for climbing, stooping, crouching, kneeling, and crawling, no limitations for reaching, handling, fingering, and feeling, and was limited in working with heavy machinery. Tr. 724. The ALJ found that Dr. Resendiz's opinion was unpersuasive because it was unsupported by Dr. Resendiz's exam showing normal gait and full motor strength, as well as being inconsistent with other treatment records, which reflected no weakness and mild findings on x-ray. Tr. 21 (citing Tr. 711, 716, 722, 724).

The ALJ's reasoning, however, is unsupported. Dr. Resendiz assessed plaintiff's limitations as a combination of chronic back pain and obesity, and it is unclear how the ALJ's

cited evidence refutes that obesity has an effect on plaintiff's functional assessment, especially considering the ALJ makes note of plaintiff's body mass index throughout their opinion. As such, the ALJ erred in rejecting Dr. Resendiz's opinion.

Lai Chim Chan, ND, provided a medical opinion on March 29, 2022. Tr. 1061. In his opinion, plaintiff would need to lie down or rest periodically during the day and would need to frequently adjust position due to chronic back pain. Tr. 1057-58. The ALJ rejected Chan's opinion because it was provided after a single phone consult and no findings were provided to support the opinion. The ALJ is correct; Chan's opinion contains no objective findings, and his opinion is based solely on plaintiff's subjective complaints. As such, Chan's opinion was inconsistent with his own assessment, and served as a specific and legitimate reason to reject his opinion. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Lastly, Kathryn Smith, PMHNP, provided a medical opinion on January 22, 2022. Tr. 932-36. In it, she opined that she has been treating plaintiff since March 27, 2019, and that plaintiff has a mild to marked limitation in her ability to remember simple instructions, a mild limitation in understanding and remembering complex instructions, low frustration tolerance, and would be unable to maintain attention and concentration for 15 percent or more of a normal workday. Tr. 929, 33, 935. She further explained that plaintiff would need to build the stamina necessary to sustain a 40-hour work week, and that her difficulty sleeping, and insomnia, would make attendance challenging. Tr. 930. The ALJ rejected Smith's opinion because it was inconsistent with her own treatment records, showing that plaintiff has normal memory. Tr. 21 (citing Tr. 574, 581, 590, 672, 683, 733, 737, 743, 755, 761, 776, 793, 810, 873, 885, 1065). While these records do reflect that plaintiff has a normal memory, they also repeatedly show that plaintiff's attention and concentration are abnormal, waxing and waning between "within normal

limits" to "other" or "poor." Tr. 672, 683, 743, 755, 793, 873, 885, 1065. The ALJ does not discuss plaintiff's insomnia or Smith's assessment that attendance would be challenging because of her insomnia. The ALJ did not err in rejecting part of Smith's opinion as it pertains to plaintiff's memory, however, it was error to reject the portion of Smith's opinion noting that plaintiff would have limitations in her ability to sustain attention and concentration and the affect her insomnia would have on her attendance.

In summary, the ALJ properly rejected Chan's opinion because it was based solely on subjective complaints during a phone consultation. The ALJ erred, however, in rejecting Dr. Resendiz's opinion because the ALJ failed to provide substantial evidence refuting Dr. Resendiz's assessment that her obesity and chronic back pain led to greater restrictions combined. The ALJ also erred in rejecting the portions of Smith's opinion addressing limitations related to plaintiff's ability to sustain attention and concentration, as well as limitations due to her insomnia.

## III.    Lay Witness Testimony

Lay witness testimony about a claimant's symptoms is competent evidence that an ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (holding that competent lay witness testimony "*cannot* be disregarded without comment") (emphasis in original).

In addition to plaintiff's own subjective symptom testimony, her roommate provided a third-party statement. Tr. 294-301. Plaintiff argues the ALJ erred by disregarding the lay witness statement without "giv[ing] reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). The Commissioner argues the ALJ properly discounted the lay witness

testimony because it was inconsistent with plaintiff's medical records. The Commissioner is correct.

Plaintiff's roommate provided a statement describing plaintiff's worsening condition, stating that plaintiff suffers from severe back pain, insomnia, fatigue, ADHD, and a rejection sensitivity. Tr. 294. She also notes that plaintiff has difficulties maintaining appropriate hygiene, that the stress of work does not allow her to sustain work for more than a month, that she needs constant reminders for medication, chores, and hygiene, and that she cannot stand for more than five minutes or walk more than 50 feet without rest. Tr. 294-300. Plaintiff's roommate further notes that plaintiff has difficulties lifting, squatting, bending, reaching, walking, kneeling, hearing, and stair climbing. Tr. 299. Mentally, plaintiff has difficulties with her memory, completing tasks, concentration, understanding, following instructions, and getting along with others. Tr. 299. The ALJ found this third-party statement inconsistent with plaintiff's medical records, which showed normal balance and gait, intact sensation, and reflexes, five out of five muscle strength, normal muscle tone, and normal memory. Tr. 21.

As discussed above, plaintiff's subjective symptom testimony was properly discounted based on inconsistencies with her medical records. While that reason alone cannot serve as a proper basis for discounting plaintiff's testimony, it can serve as a germane reason to discount the third-party report. Therefore, the ALJ did not err in evaluating the lay witness testimony from plaintiff's roommate.

## IV.    Remand for Further Proceedings

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Harman v. Apfel,* 211 F.3d 1172, 1176-78 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Treichler v. Comm'r of Soc. Sec. Admin.,* 775 F.3d 1090, 1090-1100 (9th Cir. 2014). The court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled. *Strauss v. Comm'r of Soc. Sec. Admin.,* 635 F.3d 1135, 1138 (9th Cir. 2011); see also *Dominguez v. Colvin,* 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

As discussed herein, the ALJ committed harmful legal error by failing to identify specific, clear, and convincing reasons for discounting plaintiff's subjective symptom testimony, and by failing to properly evaluate the opinions of Joseph Resendiz, DO, and Kathryn Smith, PMHNP. Further proceedings would be useful in determining whether plaintiff's testimony and the medical opinions are, in fact, not supported by substantial evidence and allow the ALJ to resolve any necessary changes to the plaintiff's resulting RFC.

In light of the lack of reasoning in disregarding plaintiff's testimony and the medical opinions, the appropriate remedy is to remand to the Commissioner for further proceeding to provide proper reasoning as well as provide plaintiff with a psychological diagnostic exam in order to resolve any ambiguities surrounding her ability to sustain attention and concentration as well as her memory, understanding, and ability to carry out tasks. The Commissioner shall also take any further action, as necessary, and issue a new decision.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is REVERSED, and this case is

REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 3rd day of June, 2024.


_____
/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge